IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| SAMANEH EBRAHIMI, *et al.* | ) | |
| | ) | |
| Plaintiffs-Petitioners, | ) | |
| | ) | Case No. 23 C 3867 |
| v. | ) | |
| | ) | Judge Joan H. Lefkow |
| ANTONY J. BLINKEN, in his official | ) | |
| capacity as Secretary of State, *et al.*, | ) | |
| | ) | |
| Defendants-Respondents. | ) | |

## OPINION AND ORDER

Samaneh Ebrahimi and her father Akbar Ebrahimi petition for a writ of mandamus and seek declaratory and injunctive relief against United States Secretary of State Antony Blinken, United States Assistant Secretary for Consular Affairs Rena Bitter, and Counsel General of the United States Embassy in Yerevan Stephanie Zakhem.[1] Plaintiffs-petitioners allege that defendants-respondents have unreasonably delayed rendering a decision on Akbar's immigrant visa application, in violation of the Administrative Procedure Act (APA), 5 U.S.C. § 500 *et seq.*, the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq.*, and the INA's implementing regulations. Defendants-respondents move to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons discussed below, the motion (dkt. 11) is granted.

---

[1] The court has jurisdiction under 28 U.S.C. §§ 1331 and 1361. Venue is proper under 28 U.S.C. § 1391(e).

## BACKGROUND

### I.     Legal Background

The Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq.*, governs the admission of noncitizens into the United States. Under the INA, a noncitizen seeking to reside permanently in the United States and obtain a path to eventual citizenship must obtain an immigrant visa. *See* 8 U.S.C. §§ 1101(a)(15), 1181(a), 1182(a)(7), 1184(a); *United States* v. *Idowu*, 105 F.3d 728, 731 (D.C. Cir. 1997) ("Nonimmigrant visas are usually issued for short visits, as in the case of tourists and students. Immigrant visas are for permanent residence, which often leads to citizenship.") (quotation marks and citation omitted). In this case, Akbar seeks admission to the United States as a family-sponsored immigrant. (Dkt. 1 ¶ 25.); *see* 8 U.S.C. §§ 1151, 1153, 1154.

A noncitizen seeking admission bears the burden of establishing eligibility to receive a visa. *See* 8 U.S.C. § 1361; 22 C.F.R. § 40.6. Meeting this burden begins with filing a Form I-130 with U.S. Citizenship and Immigration Services (USCIS). *See* 8 U.S.C. § 1154(a); 8 C.F.R. § 204.2. If USCIS approves the petition, the noncitizen may then use Form DS-260 ("Application for Immigrant Visa and Alien Registration") to apply for a visa from the State Department. *See* 8 U.S.C. §§ 1201(a), 1202(a).

As part of this application process, the applicant attends an in-person interview with a State Department consular officer. *Id.* § 1202(e), (h); 22 C.F.R. § 42.62. Following the interview, the consular officer must either issue or refuse the visa. *See* 22 C.F.R. § 42.81(a). If "it appears to the consular officer, from statements in the application, or in the papers submitted therewith, that such alien is ineligible to receive a visa … under [8 U.S.C. § 1182]" or if "the consular officer knows or has reason to believe that such alien is ineligible to receive a visa[,]" then "[n]o visa or

other documentation shall be issued" to the applicant. 8 U.S.C. § 1201(g); *see also* 22 C.F.R.

§ 40.6. If the visa is refused, "[t]he consular officer shall inform the applicant of the provision of

law or implementing regulation on which the refusal is based and of any statutory provision of

law or implementing regulation under which administrative relief is available." 22 C.F.R.

§ 42.81(b).

## II.    Factual Background

On or about February 20, 2020, United States citizen Samaneh Ebrahimi filed a petition

for an immigration visa on behalf of her father, Iranian national Akbar Ebrahimi, via Form I-130

("Petition for Alien Relative"). (Dkt. 1 ¶¶ 71–73.) On October 2, 2020, USCIS approved the

I-130 petition. (*Id.* ¶ 74.) On October 8, 2020, USCIS sent the petition to the National Visa

Center for processing. (*Id.* ¶ 75.) On November 28, 2021, plaintiffs-petitioners filed Form

DS-260 and paid the required processing fees. (*Id.* ¶ 76.) In March 2023, plaintiffs-petitioners

received notice that the Consular Section of the United States Embassy in Yerevan would

conduct a visa interview with Akbar on May 11, 2023. (*Id.* ¶¶ 77–78.) After the interview, Akbar

was informed that his application would need to undergo "administrative processing" and was

therefore "temporarily refused" under 8 U.S.C. § 1201(g), also referred to as Section 221(g). (*Id.*

¶ 78.) Akbar was also told that the "refusal may be overcome once the missing documentation

and/or administrative processing have been met" and was given a copy of Form DS-5535

("Supplemental Questions for Visa Applicants"). (*Id.* ¶¶ 78–79.) Plaintiffs-petitioners "promptly

completed and submitted [Akbar's] detailed response[s]" to the supplemental questionnaire. (*Id.*

¶ 79.) According to the State Department's website, Akbar's application was refused as of

May 26, 2023:

> A U.S. consular officer has adjudicated and refused your visa application. … If
> you were informed by the consular officer that your case was refused for

administrative processing, your case will remain refused while undergoing such processing. You will receive another adjudication once such processing is complete. Please be advised that the processing time varies and that you will be contacted if additional information is needed.

(*Id.* ¶ 82; dkt. 1-2, Exhibit B.) No additional information has been requested. (Dkt. 1 ¶ 84.)

Forty days after Akbar's interview with the consular officer, on June 20, 2023, plaintiffs-petitioners initiated this action, alleging that they had "yet to receive a final decision on the pending visa application." (*Id.* ¶ 80.) They claim that Akbar "is eligible for and entitled to receive the visa he seeks" unless he is "ineligible under a specific ground of ineligibility set forth in the governing statutes and regulations" and that "the failure … to timely adjudicate [his] application is causing severe emotional distress and psychological harm to [his] entire family by forcing them to remain separated with no idea when they will be reunited." (*Id.* ¶¶ 87, 98, 114.) Alleging that Akbar's application has been "unreasonably delayed," plaintiffs-petitioners seek a writ of mandamus under this court's mandamus authority, 28 U.S.C. § 1361, compelling defendants to adjudicate Akbar's visa application (Count I); an injunction under the APA compelling the same adjudication and enjoining defendants from withholding adjudication (Counts II and III); and a declaration under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, that defendants' delay in adjudicating Akbar's application is unreasonable and violates the INA, its implementing regulations, and agency guidance, and that plaintiffs-petitioners "are entitled to a prompt adjudication of the immigrant visa application." (Count IV). (*Id.* at 23–33.)

Defendants move to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that (1) the case is moot, (2) even if not moot, the case is non-justiciable under the doctrine of consular nonreviewability, and (3) even if justiciable, plaintiffs-petitioners' claims lack merit because there is no legal entitlement to a visa and plaintiffs-petitioners' Complaint insufficiently pleads unreasonable delay. (Dkt. 12 at 7–13.)

4

## LEGAL STANDARDS

### I. Motion to Dismiss Under Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to challenge the court's subject-matter jurisdiction. The party seeking to have its case heard in federal court bears the initial "burden of demonstrating that the district court has subject-matter jurisdiction over [the] case[.]" *Thornley* v. *Clearview AI, Inc.*, 984 F.3d 1241, 1244 (7th Cir. 2021). When the defendant later challenges subject-matter jurisdiction on mootness grounds, however, the defendant bears the burden of establishing that the court no longer has jurisdiction. *West Virginia* v. *EPA*, 597 U.S. 697, 719 (2022). If the court determines that it lacks subject-matter jurisdiction, then "the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

### II. Motion to Dismiss Under Rule 12(b)(6)

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint to state a claim upon which relief may be granted. *See McReynolds* v. *Merrill Lynch & Co., Inc.*, 694 F.3d 873, 879 n.4 (2012). To withstand such a challenge, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. When ruling on a 12(b)(6) motion, the court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences in the plaintiff's favor. *See Hughes* v. *Nw. Univ.*, 63 F.4th 615, 630 (7th Cir. 2023).

## ANALYSIS

**I.     Justiciability: Standing and Mootness**

Article III of the Constitution "limits the jurisdiction of federal courts 'to the resolution of 'Cases' and 'Controversies.''" *Brown* v. *Kemp*, 86 F.4th 745, 760–61 (7th Cir. 2023) (quoting *TransUnion LLC* v. *Ramirez*, 594 U.S. 413, 423 (2021)). This constitutional constraint "subsists through all stages of federal judicial proceedings," meaning that there must always be an "actual, ongoing" controversy for a federal court to have subject-matter jurisdiction. *Lewis* v. *Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990). At the outset of litigation, a controversy exists if the plaintiff demonstrates that he has standing—that he has suffered or is likely to suffer "an injury that (1) is concrete and particularized, (2) was or will be caused by the defendant, and (3) likely will be remedied by a favorable judgment." *Brown*, 86 F.4th at 761. Put another way, the plaintiff must have "a legally cognizable interest, or personal stake, in the outcome of the action." *Genesis Healthcare Corp.* v. *Symczyk*, 569 U.S. 66, 71 (2013) (citations and quotation marks omitted). But if, after the suit is commenced, "an intervening circumstance deprives the plaintiff" of that personal stake "at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Id.* at 72. When invoking federal subject-matter jurisdiction, the plaintiff bears the burden of establishing his standing to bring suit, but thereafter the burden shifts to the defendant "to establish that a once-live case has become moot." *West Virginia*, 597 U.S. at 719.

Defendants-respondents first seek dismissal on the grounds that the consular officer's May 2023 decision to refuse Akbar's application renders moot plaintiffs-petitioners' "claims of unreasonable delay … where [plaintiffs-petitioners] are seeking a re-adjudication of that

6

application." (Dkt. 17 at 2.) In other words, they argue, plaintiffs-petitioners have already been afforded the adjudication they ask the court to compel. (Dkt. 12 at 7.)

Plaintiffs-petitioners counter that the case is not moot because a final decision on Akbar's visa application "is still pending administrative processing." (Dkt. 14 at 10.) Regardless of the "refusal" label applied by the State Department, they argue, the consular officer's decision cannot be final because the officer did not provide "the basis for refusal" and "the specific provision of law" on which refusal is based, as required by 22 C.F.R. §§ 41.121(c), 42.81(b). (*Id.* at 10.) Rather, Akbar's application was refused for further "administrative processing" under INA Section 221(g), which plaintiffs-petitioners argue cannot support a *final* decision because such refusals may be reviewable. (*Id.* at 11.) Furthermore, they argue, when administrative processing is required under Section 221(g), a refusal is only a "quasi-refusal," such that a visa-application case "should not be terminated until the processing" is complete. (*Id.* (citing Foreign Affairs Manual (FAM) 4.03.10-3(C), 4.11-3(B)(2)).) In short, plaintiffs-petitioners argue that the case is not moot because adjudication of the visa application is ongoing.

Defendants-respondents reply that plaintiffs-petitioners proceed from the false assumption that the refusal of Akbar's application was tentative and potentially reviewable.[2] (Dkt. 17 at 3–4.) Calling the decision on Akbar's application "temporary," defendants-respondents argue, "is merely artful re-labeling" that does not alter the finality of the consular officer's decision. (*Id.* at 3.)

At the threshold, the court must reframe the parties' mootness arguments in terms of standing doctrine. Defendants-respondents have moved to dismiss on the grounds that the case is

---

[2] Defendants-respondents also suggest that plaintiffs-respondents' reliance on the Foreign Affairs Manual (FAM) is "misplaced" because they look only to "past versions" of the manual (dkt. 17 at 4), but defendants-respondents do not develop this suggestion by, for example, pointing out how the current version of the manual differs from those past versions.

moot, and plaintiffs-petitioners have (naturally) responded in like terms. But standing doctrine, rather than mootness doctrine, governs the question of justiciability on these facts and at this stage of litigation. Here, the parties are not debating whether an *intervening* circumstance deprives the court of federal subject-matter jurisdiction. Akbar's application was refused at least as early as May 26, 2023, nearly a month *before* plaintiffs-petitioners initiated this action. (Dkt. 1 ¶¶ 80, 82; dkt. 1-2, Exhibit B.) Thus, while the parties frame their arguments in terms of mootness, they are really debating whether plaintiffs-petitioners have standing to bring the action in the first place. *See Bodo* v. *Nielsen*, No. 17 C 9254, 2018 WL 5884488, at *2 (N.D. Ill. Nov. 9, 2018) (reclassifying "mootness argument as a standing challenge" under similar circumstances). This "distinction matters" because plaintiffs-petitioners bear the burden to establish standing, while defendants-respondents would bear the burden to establish mootness. *West Virginia*, 597 U.S. at 719.

The parties' mootness arguments center on whether the court may (yet) afford plaintiffs-petitioners any of the relief they seek. Reframed in terms of standing, the question is, therefore, whether plaintiffs-petitioners have established that the injuries they have suffered because of defendants-respondents' allegedly "unreasonable delay" in adjudicating Akbar's visa application are injuries that are "likely [to] be remedied by a favorable judgment." *See Brown*, 86 F.4th at 761. To answer this question, the court begins with the requested relief.

Plaintiffs-petitioners ask the court to compel the adjudication of Akbar's visa application (Counts I, II, and III), to enjoin the withholding of that adjudication (Counts II and III), and to declare that plaintiffs-petitioners are entitled to a prompt adjudication and that the delay in adjudication is unreasonable and unlawful (Count IV). All the requested relief centers on the *adjudication* of Akbar's visa application. If that adjudication was complete before this litigation

8

commenced, then the court cannot provide any of the requested remedies, and plaintiffs-petitioners lack standing to bring their claims. The inquiry, therefore, is whether plaintiffs-petitioners have met their burden to show that the adjudication of Akbar's visa application is ongoing and not, as defendants-respondents argue, already completed.

Both parties point to persuasive authority to support their respective positions. Defendants-respondents cite several district court decisions concluding that an adjudication is complete where, as here, an application is refused under INA Section 221(g). (*See* dkt. 12 at 7–9.) In *Elhabash* v. *United States Department of State*, for example, the court concluded that a Section 221(g) refusal for administrate processing provided after the visa applicant filed suit was sufficient to moot the applicant's request for a decision on his application—even though the "refusal could be overcome after processing was complete." No. 09 C 5847, 2010 WL 1742116, at *1–3 (D.N.J. Apr. 27, 2010) (applicant's "only recourse is to await the reconsideration of his application … after the administrative processing is complete"). *See also Hong Lin Zhou* v. *Chertoff*, No. 08 C 4523, 2009 WL 2246231, at *2 (N.D. Cal. July 24, 2009) (where application refused under Section 221(g), potential for review and reconsideration does not render adjudication "ongoing"); *Svensborn* v. *Keisler*, No. 07 C 5003, 2007 WL 3342751, at *1–4 (N.D. Cal. Nov. 7, 2007) (ongoing review "properly construed" as part of reconsideration process rather than as "indication that no decision has yet been reached"). To these courts at least, "adjudication" refers to the decision-making process leading to the consular officer's decision to either issue or refuse the visa as required by 22 C.F.R. § 42.81(a). That the consular officer's refusal of an application "may be overcome by the presentation of additional evidence" under 22 C.F.R. § 42.81(b) or subject to reconsideration under 22 C.F.R. § 42.81(e) has not persuaded

these courts that those avenues for review and reconsideration extend the "adjudication" beyond the consular officer's decision.

For their part, plaintiffs-petitioners cite two decisions that go the other way.[3] (Dkt. 14 at 9–10.) In *Vulupala* v. *Barr*, for example, where a visa application was refused for administrative processing under Section 221(g), the court concluded that such a refusal is an "interim decision … not sufficiently final to warrant the application of the doctrine" of consular nonreviewability. 438 F. Supp. 3d 93, 96–98 (D.D.C. 2020). To accept the State Department's "refusal" label as determinative would "elevate[] form over substance." *Id.* at 98. Similarly, in *Khazaei* v. *Blinken*, the court rejected the State Department's redressability argument:

> Plaintiffs have pled that their [visa] applications are still pending administrative processing, and four of them, in fact, have been issued visas since the inception of this litigation. Plainly, the Department's review of their applications is not complete. Plaintiffs' injuries, furthermore, may be redressed with an order to complete that review more expeditiously. Standing thus exists here.

No. 23 C 1419, 2023 WL 6065095, at *4 (D.D.C. Sept. 18, 2023) (citations omitted).

While the decisions cited by both parties are illuminating, none is quite on point. In this case, not only was Akbar's application refused for administrative processing under Section 221(g), but he was also later informed by the State Department that further adjudication would be necessary: "You *will* receive another adjudication once such [administrative] processing is complete." (Dkt. 1 ¶ 82; dkt. 1-2, Exhibit B) (emphasis added). Thus, the question of whether a refusal for administrative processing under Section 221(g) signifies, on its own, that the adjudication of a visa application is ongoing or complete is not squarely before the court. Rather,

---

[3] Plaintiffs-petitioners also cite information on the Department of State's website that they read as further supporting their contention that refusals which "can be overcome by either applicant or agency action, … simply cannot be deemed 'final.'" (Dkt. 14 at 9 (citing U.S. Department of State, *Administrative Processing Information*, https://tinyurl.com/556wfwrf).) Because the court decides the issue in plaintiffs-petitioners' favor based on case law, the court need not consider this argument.

the court must consider the State Department's particular promise to Akbar that he "will" receive another adjudication when administrative processing concludes.

As other courts have noted, the State Department's "use of 'will'" in this communication "all but guarantees [the applicant] another adjudication once administrative processing is complete." *Barazandeh* v. *U.S. Dep't of State*, No. 23 C 1581, 2024 WL 341166, at *5 (D.D.C. Jan. 30, 2024); *see also Kiani* v. *Blinken*, No. 23 C 5069, 2024 WL 658961, at *5 (C.D. Cal. Jan. 4, 2024) ("It is reasonable to infer that under this process that forthcoming decision is actually the final adjudication …, and not a re-adjudication."); *Quiros* v. *Amador*, No. 21 C 2433, 2023 WL 4364161, at *4 (D.D.C. July 6, 2023) ("application clearly remains in administrative processing per the express language of the consular officials"); *Isse* v. *Whitman*, No. 22 C 3114, 2023 WL 4174357, at *1, *4–5 (D.D.C. June 26, 2023); *Giliana* v. *Blinken*, 596 F. Supp. 3d 13, 18–19 (D.D.C. 2022); *Billoo* v. *Baran*, No. 21 C 5401, 2022 WL 1841611, at *2–4 (C.D. Cal. Mar. 18, 2022) ("Department of State's own statements and instructions on their website … demonstrate that [applicant] has not received a final determination on his visa application."). These courts have all concluded that, under these circumstances, the adjudication of the visa application is not yet complete, and this court agrees. Thus, the court could provide a remedy if that ongoing adjudication has been unreasonably delayed. Because there is no dispute that an "unreasonable delay" in reviewing plaintiffs' visa application would constitute a "concrete and particularized" injury caused by defendants-respondents and the court finds that such alleged injury is judicially redressable, plaintiffs-petitioners have standing.

## II.    Consular Nonreviewability

"'Consular nonreviewability' is the general rule that decisions 'to issue or withhold a visa' are not reviewable in court 'unless Congress says otherwise.'" *Matushkina* v. *Nielsen*, 877

F.3d 289, 294 (7th Cir. 2017) (quoting *Saavedra Bruno* v. *Albright*, 197 F.3d 1153, 1159 (D.C. Cir. 1999)). Because "Congress has delegated the power to determine who may enter the country to the Executive Branch, and courts generally have no authority to second-guess the Executive's decisions[,]" *Yafai* v. *Pompeo*, 912 F.3d 1018, 1020 (7th Cir. 2019), "consular nonreviewability creates a 'general norm of nonreviewability[,]'" *Matushkina*, 877 F.3d at 294 (quoting *Hazama* v. *Tillerson*, 851 F.3d 706, 708 (7th Cir. 2017)). "The doctrine" thus "bars judicial review of visa decisions made by consular officials abroad[]" and applies "even to suits where a plaintiff seeks to challenge a visa decision indirectly." *Id.* at 294–95 (collecting cases). "Courts are not required to take a plaintiff's word that she is not challenging the visa denial[,]" *id.*, and plaintiffs "cannot shield their claims from the doctrine of consular nonreviewability by 'repackaging [their] substantive complaints as procedural objections.'" *Pak* v. *Biden*, 91 F.4th 896, 901 (7th Cir. 2024) (quoting *Doe* v. *McAleenan*, 926 F.3d 910, 911 (7th Cir. 2019)).

Defendants-respondents argue that this case is barred by the doctrine of consular nonreviewability because (1) plaintiffs-petitioners ask the court "to involve itself with the visa-issuing process—even after a refusal was given to them" in May 2023—"[b]y requesting prioritization of their visa application" over the applications of others and (2) refusals under Section 221(g) are sufficient to trigger the doctrine as a matter of law. (Dkt. 12 at 9–11.) Plaintiffs-petitioners respond that the doctrine of consular nonreviewability does not apply where, as here, there is an allegation of unreasonable delay while an application undergoes administrative processing. (Dkt. 14 at 13 (citing *Ghadami* v. *U.S. Dep't of Homeland Sec.*, No. 19-00397 (ABJ), 2020 WL 1308376, at *5 (D.D.C. Mar. 19, 2020)).) In support, they cite nearly a dozen decisions from other district courts holding as much.[4] (*Id.* at 13–14.)

---

[4] *See Ghadami* v. *U.S. Dep't of Homeland Sec.*, No. 19 C 397, 2020 WL 1308376, at *5 (D.D.C. Mar. 19, 2020); *Vulupala*, 438 F. Supp. 3d at 98–99; *Mohamed* v. *Pompeo*, No. 19 C 1345, 2019 WL

Defendants-respondents reply, first, that those "out-of-circuit decisions" are out of step with Seventh Circuit case law, which holds that "the doctrine of consular nonreviewability precludes judicial review of a consular officer's decision to issue or *withhold* a visa." (Dkt. 17 at 5 (emphasis in original) (citing *Matushkina*, 877 F.3d at 294; *Yafai*, 912 F.3d at 1020–21; *Amoakowaa* v. *Reno*, 94 F. Supp. 2d 903, 905 (N.D. Ill. 2000)).) Moreover, defendants-respondents argue, "multiple courts have concluded that the doctrine of nonreviewability applies to situations where, as here, the consular officer refuses the visa" under Section 221(g) and the plaintiff seeks an expedited re-adjudication. (*Id.* at 5–7 (citing *Hettiarachchige* v. *Bitter*, No. 22 C 3622, 2022 WL 17738771, at *2 (S.D.N.Y. Dec. 16, 2022); *Abdo* v. *Tillerson*, No. 17 C 7519, 2019 WL 464819, at *3 (S.D.N.Y. Feb. 15, 2019); *Saleh* v. *Holder*, 84 F. Supp. 3d 135, 139–40 (E.D.N.Y. 2014)).)

Some of defendants-respondents' arguments assume that the Section 221(g) "refusal" represents a final decision, the review of which would be barred by the doctrine of consular nonreviewability. Others assume that the initial adjudication concluded with that refusal and that plaintiffs-petitioners seek only an expedited "re-adjudication." In light of the court's prior determination that the adjudication of Akbar's application is ongoing, these arguments cannot prevail on the question of nonreviewability.

Turning to defendants-respondents' remaining arguments, the court declines to construe plaintiffs-petitioners' Complaint as "*requesting* prioritization of [Akbar's] visa application" over

---

4734927, at *4 (E.D. Cal. Sept. 27, 2019); *Afghan & Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the U.S.* v. *Pompeo*, 18 C 1388, 2019 WL 367841, at *10 (D.D.C. Jan. 30, 2019); *Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the U.S.* v. *Kerry*, 168 F. Supp. 3d 268, 287 (D.D.C. 2016); *Alwan* v. *Risch*, No. 18 C 73, 2019 WL 1427909, at *4 (S.D. Ohio Mar. 29, 2019); *Saleh* v. *Tillerson*, 293 F. Supp. 3d 419, 431 (S.D.N.Y. 2018); *P.K.* v. *Tillerson*, 302 F. Supp. 3d 1, 11 (D.D.C. 2017); *Assad* v. *Holder*, No. 13 C 117, 2013 WL 5935631, at *4 (D.N.J. Nov. 1, 2013); *Schutz* v. *Sec'y, Dep't of State*, No. 11 C 1296, 2012 WL 275521, at *2–3 (M.D. Fla. Jan. 31, 2012); *Al-Gharawy* v. *U.S. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 11–17 (D.D.C. 2022).

the applications of others. (Dkt. 12 at 9–10 (emphasis added).) Plaintiffs-petitioners ask for a declaration that they are entitled to a "prompt" adjudication, a writ of mandamus and an injunction compelling complete adjudication within 30 days, and an order enjoining "any further unreasonable delay" in the adjudication of Akbar's application. (Dkt. 1 at 33.) Put differently, plaintiffs-petitioners seek relief to remedy the allegedly unlawful delay in making a final decision on Akbar's visa application—not to cut to the front of the line. Because nothing in the Complaint suggests that plaintiffs-petitioners are asking for any kind of preferential treatment, this argument is without merit.[5]

As for defendants-respondents' contention that a refusal under Section 221(g) for administrative processing triggers nonreviewability as a matter of law (dkt. 12 at 10–11), many of the decisions the court has already discussed conclude otherwise. *See*, *e.g.*, *Barazandeh*, 2024 WL 341166, at *4; *Kiani*, 2024 WL 658961, at *5; *Khazaei*, 2023 WL 6065095, at *4–5; *Quiros*, 2023 WL 4364161, at *4; *Isse*, 2023 WL 4174357, at *4; *Giliana*, 596 F. Supp. 3d at 18–19; *Billoo*, 2022 WL 1841611, at *3–4; *Vulupala*, 438 F. Supp. 3d at 98–100; *see also Shahijani* v. *Laitinen*, No. 23 C 3967, 2023 WL 6889774, at *3 (C.D. Cal. Oct. 6, 2023). At least one court in this district has likewise recognized that relief of the kind plaintiffs-petitioners pursue "might be available without running afoul of the consular nonreviewability doctrine." *Al Khader* v. *Blinken*, No. 18 C 1355, 2021 WL 678701, at *5 (N.D. Ill. Feb. 22, 2021) (collecting extra-circuit cases). Although defendants-respondents cite extra-circuit cases they claim hold the contrary, most of

---

[5] The Complaint does allege that the "Immigration and Nationality Act Amendments of 1965 … eliminated the national origins quota system … and gave *priority* to immigrants with relatives living permanently in the United States" (dkt. 1 ¶ 32 (emphasis added)), but defendants-respondents presumably do not mean to construe this legislative-backdrop allegation as requesting priority treatment for Akbar over all other applicants. That said, to the extent that compelling adjudication of Akbar's application would necessarily give plaintiffs-petitioners priority treatment over other visa applicants, the court will consider the issue of priority when addressing the plausibility of plaintiffs-petitioners' claim of unreasonable delay.

those cases do not speak to refusals under Section 221(g) for administrative processing.[6] Those that do speak to such refusals may demonstrate that district courts are split on this issue, but they are also distinguishable because they do not address the situation presented here, where the Section 221(g) refusal is followed by assurances of further adjudication.[7] As already noted, under those circumstances, courts have overwhelmingly concluded that the doctrine of consular nonreviewability does not apply. More important, defendants-respondents do not point to any controlling authority holding that Section 221(g) refusals requiring administrative processing implicate, *per se*, the doctrine of consular nonreviewability. Furthermore, even if such authority existed, it would not necessarily determine the outcome here because, as already discussed, after Akbar's application was refused under Section 221(g) for administrative processing, he was told that he "will receive another adjudication once such processing is complete." (Dkt. 1 ¶ 82; dkt. 1-2, Exhibit B.) Just as the ongoing adjudication of Akbar's application satisfies standing doctrine's redressability prong, that ongoing adjudication means that no final decision has been made that would implicate the doctrine of consular nonreviewability.

Defendants-respondents strain Seventh Circuit case law to the breaking point when they argue that *Matushkina* and *Yafai* dictate a different result. (Dkt. 17 at 5.) *Matushkina* dealt with a visa application that had been denied under 8 U.S.C. § 1182(a)(6)(C)(i) based on a previous

---

[6] *See Sesay* v. *United States*, 984 F.3d 312, 316 (4th Cir. 2021) (doctrine applied to final visa determination based on Section 221(g) refusal not requiring administrative processing), *Bechirian* v. *Blinken*, No. 20-55913, 2022 WL 260052, at *1 (9th Cir. Jan. 27, 2022) (consular officer's reliance on Section 221(g), along with applicant's failure to provide proof of fiancé relationship, triggered doctrine), *Yousufzai* v. *Garland*, No. 22 C 1454, 2023 WL 4236906, at *1–3 (E.D. Va. June 27, 2023) (doctrine applied where application refused under Section 212(a)(3)(B) for suspected terrorist activities), *Gogilashvili* v. *Holder*, No. 11 C 1502, 2012 WL 2394820, at *1, *5–6 (E.D.N.Y. June 25, 2012) (same where application refused based on misrepresentations under Section 212(a)(6)(C)(i)).

[7] *See Hettiarachchige* v. *Bitter*, No. 22 C 3622, 2022 WL 17738771, at *2 (S.D.N.Y. Dec. 16, 2022) (applying doctrine to request to compel adjudication of application refused for administrative processing); *Abdo* v. *Tillerson*, No. 17 C 7519, 2019 WL 464819, at *2–4 (S.D.N.Y. Feb. 15, 2019) (same); *Saleh* v. *Holder*, 84 F. Supp. 3d 137–40 (E.D.N.Y. 2014) (same).

determination of inadmissibility due to "a willful misrepresentation of a material fact." 877 F.3d at 291. *Matushkina* simply did not confront a refusal under Section 221(g) for administrative processing, much less a refusal expressly promising further adjudication. The same is true of *Yafai*, where the visa application was refused not for further administrative processing under Section 221(g) but for attempted smuggling under 8 U.S.C. § 1182(a)(6)(E). 912 F.3d at 1019–20. Aside from stating general principles of consular nonreviewability, these decisions offer little guidance as to the applicability of the doctrine under the circumstances presented here.[8]

For all these reasons, and in accord with the approach taken by other district courts to consider this issue, the court concludes that the doctrine of consular nonreviewability is not implicated where, as here, a plaintiff-petitioner seeks an expedited adjudication of a visa application that has been refused for administrative processing under Section 221(g) and for which the applicant has been assured of further adjudication.

## III.    Motion to Dismiss Under Rule 12(b)(6)

Although neither standing doctrine nor the doctrine of consular nonreviewability impedes plaintiffs-petitioners' ability to bring this suit, the case must nonetheless be dismissed for failure to state a claim upon which relief may be granted. In order to justify any of the requested relief— mandamus, injunction, or declaration—plaintiffs-petitioners must plausibly allege "unreasonable delay" in the adjudication of Akbar's visa application. For the reasons discussed below, they have not done so.

---

[8] Nor does *Amoakowaa* v. *Reno*, 94 F. Supp. 2d 903 (N.D. Ill. 2000), also cited by defendants-respondents, support a contrary position. As in *Matushkina* and *Yafai*, the court in *Amoakowaa* simply had no occasion to consider the applicability of the doctrine of consular nonreviewability to a claim or petition for an expedited adjudication based on a refusal under Section 221(g) for administrative processing.

A.       **Mandamus and Declaration (Counts I and IV)**

In a mandamus action, 28 U.S.C. § 1361 grants district courts the power "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." A writ of mandamus is "a drastic and extraordinary remedy reserved for really extraordinary causes." *United States* v. *Henderson*, 915 F.3d 1127, 1132 (7th Cir. 2019) (quoting *Cheney* v. *U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004)). For the court to grant the writ, plaintiffs-petitioners must demonstrate: "(1) a clear right to the relief sought; (2) that the defendant has a duty to do the act in question; and (3) [that] no other adequate remedy is available." *Calderon-Ramirez* v. *McCament*, 877 F.3d 272, 275 (7th Cir. 2017) (quoting *Iddir* v. *INS*, 301 F.3d 492, 499 (7th Cir. 2002)).

In this case, the third element is determinative, for the court may grant plaintiffs-petitioners the same remedy—compelling the adjudication of Akbar's application—via injunctive relief under the APA. *See* 5 U.S.C. § 706(1) (authorizing district courts to "compel agency action unlawfully withheld or unreasonably delayed"). As other courts have recognized, where relief sought via mandamus is duplicative of that sought under the APA, the court must dismiss the petition for writ of mandamus. *See Kaur* v. *Mayorkas*, No. 22 C 4514, 2023 WL 4899083, at *13 (S.D.N.Y. Aug. 1, 2023) ("Where mandamus relief is duplicative of an APA claim, it must be dismissed."); *Antonishin* v. *Keisler*, 627 F. Supp. 2d 872, 879–80 (N.D. Ill. 2007) (citing *Iddir*, 301 F.3d at 498); *Holasek* v. *U.S. Dep't of Justice*, 123 F. Supp. 2d 1126, 1129 (N.D. Ill. 2000). In short, because plaintiffs-petitioners may seek to compel the same action under the APA that they seek to compel via mandamus, the court dismisses their petition for a writ of mandamus (Count I) as duplicative.

For similar reasons, the court dismisses plaintiffs-petitioners' request for a declaration that Akbar's application has been unreasonably delayed and that he is entitled to a "prompt" adjudication. This request is subsumed within plaintiffs-petitioners' request for injunctive relief under the APA. As other courts have done, this court therefore concludes that Count IV is duplicative of Counts II and III and exercises its discretion to dismiss Count IV. *See Tempco Elec. Heater Corp.* v. *Omega Eng'g, Inc.*, 819 F.2d 746, 747 (7th Cir. 1987) ("It is well settled that the federal courts have discretion to decline to hear a declaratory judgment action, even though it is within their jurisdiction."); *Cohn* v. *Guaranteed Rate Inc.*, 130 F. Supp. 3d 1198, 1205–06 (N.D. Ill. 2015) (noting that "[i]n this district, courts commonly exercise [their] discretion" to dismiss claims for declaratory relief "where the claim for declaratory judgment substantially overlaps with [other] substantive claims" and collecting cases); *Sarkis' Cafe, Inc.* v. *Sarks in the Park, LLC*, 55 F. Supp. 3d 1034, 1038 (N.D. Ill. 2014) (dismissing declaratory-judgment counterclaim as duplicative because it would "be resolved in its entirety" by ruling on other claim).

## B.     Injunctive Relief Under the APA (Counts II and III)

Counts II and III seek injunctive relief under the APA compelling defendants-respondents to adjudicate Akbar's visa application within 30 days of this court's order and enjoining them from engaging in "any further unreasonable delay" in, or otherwise withholding, the adjudication of that application. (Dkt. 1 at 26–33.) The APA grants the federal courts the power to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Although not formally endorsed by the Seventh Circuit, a six-factor test created by the D.C. Circuit usually guides the analysis when "unreasonable delay" is alleged. *See Menominee Indian Tribe of Wis.* v. *EPA*, 947 F.3d 1065, 1075 (7th Cir. 2020) (Hamilton, J., concurring)

("The D.C. Circuit has set forth a general framework for deciding claims of agency delay that courts can apply to unanswered rulemaking petitions.") (citing *Telecomms. Research & Action Ctr.* v. *FCC ("TRAC")*, 750 F.2d 70, 80 (D.C. Cir. 1984)); *Orozco* v. *Blinken*, No. 22 C 5134, 2023 WL 4595377, at *2–6 (N.D. Ill. July 18, 2023) (applying six-factor "TRAC" analysis in this context). The *TRAC* analysis considers that:

> (1) the time agencies take to make decisions must be governed by a "rule of reason"; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'"

*TRAC*, 750 F.2d at 80 (citations omitted). These factors are not "ironclad," but they do offer "useful guidance in assessing claims of agency delay." *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (quoting *TRAC*, 750 F.2d at 80).

Defendants-respondents argue that plaintiffs-petitioners' allegations of unreasonable delay fail as a matter of law when analyzed under the *TRAC* factors. (Dkt. 12 at 13–15.) Plaintiffs-petitioners do not engage with this argument, contending instead that, at this stage of the litigation, it would be premature for the court to engage in the "fact-based inquiries" required under *TRAC*. (Dkt. 14 at 14–15 (citing *Moghaddam* v. *Pompeo*, 424 F. Supp. 3d 104 (D.D.C. 2020); *M.J.L.* v. *McAleenan*, No. 19 C 477, 2019 WL 6039971, at *6 (W.D. Tex. Nov. 13, 2019); *Nio* v. *U.S. Dep't of Homeland Sec.*, 270 F. Supp. 3d 49, 66 (D.D.C. 2017); *Hamandi* v. *Chertoff*, 550 F. Supp. 2d 46, 54 (D.D.C. 2008); *Gelfer* v. *Chertoff*, No. 06 C 6724, 2007 WL 902382, at *2 (N.D. Cal. Mar. 22, 2007)).) Defendants-respondents reply that these extra-circuit

decisions "are in direct tension" with the decisions of courts in this district to decide the issue of unreasonable delay on a motion to dismiss. (Dkt. 17 at 7 (citing *Khan* v. *Bitter*, No. 22 C 6617, 2023 WL 6311561, at *3–4 (N.D. Ill. Sept. 28, 2023); *Orozco*, 2023 WL 4595377, at *4).) In fact, defendants-respondents point out, in cases from the District of Columbia decided more recently than those cited by plaintiffs-petitioners, courts have recognized that "the weight of authority … cut[s] in favor of deciding unreasonable-delay claims at the motion-to-dismiss stage before discovery." (*Id.* at 8 (quoting *Telles* v. *Mayorkas*, No. 21 C 395, 2022 WL 2713349, at *3 n.3 (D.D.C. July 13, 2022)) (cleaned up).)

To be clear, none of these courts suggest that the merits of an unreasonable-delay claim should or should not be decided on a motion to dismiss; rather, the only issue is whether it is proper for a district court to analyze whether a plaintiff has plausibly alleged a claim of unreasonable delay. With that in mind, the court agrees with defendants-respondents that courts may, of course, undertake such an analysis, just as they undertake plausibility analyses with respect to all sorts of elements of all sorts of claims. There is nothing special about a claim for unreasonable delay that would counsel otherwise. Thus, while some courts "have declined to evaluate claims of unreasonable delay before discovery, noting that to do so would be premature because the inquiry is fact intensive[,] it is not uncommon for courts … to resolve unreasonable delay claims in visa adjudication cases on a Rule 12(b)(6) motion." *Liu* v. *Blinken*, 544 F. Supp. 3d 1, 10 n.6 (D.D.C. 2021) (collecting cases) (internal quotation marks and citations omitted). Recent cases from this district accord with this view of the procedural landscape. *See Khan*, 2023 WL 6311561, at *3–4 (concluding that court lacked subject-matter jurisdiction but noting that, even if jurisdiction were present, plaintiff's allegations of unreasonable delay "would not pass muster"); *Orozco*, 2023 WL 4595377, at *3 (analyzing unreasonable delay via *TRAC* factors on

motions to dismiss); *United African Org.* v. *Biden*, 620 F. Supp. 3d 756, 769–73 (N.D. Ill. 2022) (same); *Aljabari* v. *Mayorkas*, No. 21 C 6645, 2022 WL 2073047, at *3–6 (N.D. Ill. June 9, 2022) (same). In short, plaintiffs-petitioners' view of the impropriety of evaluating the plausibility of allegations of unreasonable delay at the motion-to-dismiss stage is out of step with the majority approach currently taken by courts both inside and outside this district.

With this procedural issue resolved, plaintiffs-petitioners' failure to dispute defendants-respondents' *TRAC* analysis is fatal to their remaining APA claims. By electing not to respond to defendants-respondents' arguments on the plausibility of the unreasonable-delay allegations, and instead placing all their eggs in the procedural basket, plaintiffs-petitioners have waived those arguments. *See Bradley* v. *Vill. of Univ. Park*, 59 F.4th 887, 897–98 (7th Cir. 2023) (nonmovant waives counter-arguments by failing to respond to movant's arguments). This waiver alone provides sufficient reason to grant the motion. *See Alioto* v. *Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("If [judges] are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning.") (quoting *Kirksey* v. *R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999)). Even if this were not the case, however, the court concludes as a matter of law that plaintiffs-petitioners have not plausibly alleged unreasonable delay in the adjudication of Akbar's application.

On or about February 20, 2020, Samaneh filed the I-130 petition on behalf of her father. (Dkt. 1 ¶ 73.) On May 11, 2023, Akbar was interviewed by a consular officer at the United States Embassy in Yerevan. (*Id.* ¶ 3.) Following the interview, Akbar's application was placed in administrative processing. (*Id.* ¶ 4.) When this case was initiated on June 20, 2023, plaintiffs-petitioners alleged that Akbar's application had "remained indefinitely" in administrative

processing since the interview forty days earlier, "leaving [them] in a perpetual state of administrative uncertainty." (*Id.* ¶¶ 4–5.) The 70-year-old Akbar suffers from worsening health conditions that, "per his physician, … necessitate daily monitoring and assistance with his daily activities and his continued treatment plan, as well as support from his family." (*Id.* ¶¶ 89–91.) Because Akbar has not been able to obtain a visa and it is too dangerous for a United States citizen like Samaneh to travel to Iran, however, Akbar and Samaneh "have been forced to meet in other countries," and Akbar generally remains "indefinitely separated from his U.S. citizen daughter, grandchild, and wife," all of whom live in the United States. (*Id.* ¶¶ 72, 93–95.) Between February 2020, when Akbar's visa case was created, and June 2023, when this case was initiated, 985 days elapsed. (*Id.* ¶ 80.) As already noted, between the consular interview and the filing of this case, forty days elapsed. Now, in May 2024, it has been approximately 12 months since Akbar's application was placed in administrative processing.

### i.  *TRAC* Factors One and Two

The first and second *TRAC* factors consider that "(1) the time agencies take to make decisions must be governed by a 'rule of reason[,]'" and "(2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason[.]" 750 F.2d at 80 (citations omitted). The first factor is the "most important factor[.]" *In re Core Commc'ns, Inc.*, 531 F.3d at 855. Courts often consider these factors together "because they both analyze whether there is 'sufficient rhyme and reason to explain the Government's response time.'" *Mahmood* v. *U.S. Dep't of Homeland Sec.*, No. 21 C 1262, 2021 WL 5998385, at *7 (D.D.C. Dec. 20, 2021) (quoting *Dastagir* v. *Blinken*, 557 F. Supp. 3d 160, 166 (D.C.C. 2021)). As defendants-respondents point out (dkt. 12 at 13), there is no federal statutory timeline for

processing visa applications for alien relatives. *See Brzezinski* v. *U.S. Dep't of Homeland Sec.*, No. 21 C 376, 2021 WL 4191958, at *5 (D.D.C. Sept. 15, 2021) (recognizing lack of "congressional imposed timeline" for processing relative visa applications). When there is no "congressionally supplied timeframe, courts typically look to case law for guidance." *Id.* While "[n]o bright lines have been drawn in this context," courts "have generally found that immigration delays in excess" of five years are unreasonable, "while those between three [and] five years are often not unreasonable." *Orozco*, 2023 WL 4595377, at *4 (quoting *Sarlak* v. *Pompeo*, No. 20 C 35, 2020 WL 3082018, at *6 (D.D.C. June 10, 2020)). Indeed, case law "typically considers 'the two-year mark' to be 'the lowest threshold for a finding of unreasonable delay' in visa processing cases." *Murway* v. *Blinken*, No. 21 C 1618, 2022 WL 493082, at *2 (D.D.C. Feb. 16, 2022) (quoting *Khan* v. *Blinken*, No. 21 C 1683, 2021 WL 5356267, at *3 (D.D.C. Nov. 17, 2021)).

As noted above, from Akbar's consular interview in May 2023, when his application was placed in administrative processing, to the resolution of this motion in May 2024, approximately 12 months have passed without a final decision. The court is not aware of any decision by any court concluding that an adjudication taking fewer than two years amounts to an unreasonable delay. *See Brzezinski*, 2021 WL 4191958, at *5 (surveying case law, finding "no case that found an unreasonable delay when the delay was under two years[,]" "a plethora of cases finding delays longer than two years to not be unreasonable[,]" and concluding 17-month delay not unreasonable) (citing *Ghadami* v. *United States Dep't of Homeland Sec.*, No. 19 C 397, 2020 WL 1308376, at *8 (D.D.C. Mar. 19, 2020) (25-month delay not unreasonable); *Bagherian* v. *Pompeo*, 442 F. Supp. 3d 87, 94–95 (D.D.C. 2020) (same)). Recently, a court in this district concluded that a delay of 12 months was so "comparatively short" that it "counsel[ed] heavily

against finding the delay unreasonable, even at the motion to dismiss stage." *Orozco*, 2023 WL 4595377, at *4. The court agrees with that perspective and concludes that the 12-month adjudication at issue here is so relatively short that it likewise "counsels *heavily* against finding the delay unreasonable[.]" *Id.* (emphasis added). In short, the first two *TRAC* factors favor the government.

        ii.       ***TRAC* Factors Three and Five**

The third and fifth *TRAC* factors consider that "(3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake" and "(5) the court should also take into account the nature and extent of the interests prejudiced by delay[.]" 750 F.2d at 80 (citations omitted). That Akbar suffers from health problems for which his treating physician recommends being close to his family makes a delay in the adjudication of his visa application "less tolerable" than a delay implicating purely economic interests. And, given Akbar's advancing age, plaintiffs-petitioners' interest in being close to each other is "prejudiced" to a greater degree than it might be were Akbar younger and healthier. At the same time, courts have repeatedly recognized that the visa applicant's "health and welfare" cannot be considered in a vacuum; rather, plaintiffs-petitioners' interests must be considered alongside the interests of those who are similarly situated. *See Calderon-Ramirez*, 877 F.3d at 275–76 (delay not unreasonable where applicant "fail[ed] to set forth any facts that differentiate himself from other[s] … waiting ahead of him for adjudication"); *Khan*, 2023 WL 6311561, at *4 (applying *Calderon-Ramirez* to find delay not unreasonable); *Pushkar* v. *Blinken*, No. 21 C 2297, 2021 WL 4318116, at *9 (D.D.C. Sept. 23, 2021) (courts "must consider" not only applicant's health and welfare, "but also that of others similarly-situated").

Here, plaintiffs-petitioners have, by their own allegations, indicated that there is nothing to differentiate Akbar's circumstances from those of other similarly-situated Iranians seeking alien-relative visas. While the Complaint highlights Akbar's health concerns, it also alleges that "in Iran, the availability and affordability of medicines is a major concern, and the situation has continued to decline as a result of U.S. sanctions. Medications are costly and those living in Iran must make huge sacrifices to buy the necessary medicines for their health." (Dkt. 1 ¶ 89.) The Complaint also alleges that recent "economic sanctions have decreased the importation of medications [to] Iran, crippling the healthcare sector. Alternatively, these medications are easily obtained in the [United States] and [are] much more affordable." (*Id.* ¶ 90.) Thus, while the court is sympathetic to Akbar's health concerns, that healthcare is a problem for all Iranians weighs against finding unreasonable delay in the adjudication of Akbar's application.

The same is true regarding the danger Samaneh might risk were she to travel to Iran. The Complaint alleges that the State Department has warned "all US citizens … not [to] travel to Iran due to the risk of arbitrary arrest and detention of U.S. citizens" and cautioned that there "is a very high risk of arrest and detention of U.S. citizens in Iran, particularly U.S.-Iranian dual nationals." (*Id.* ¶ 92.) Thus, while the court understands that plaintiffs-petitioners "have been forced to meet in other countries" because Samaneh "would be jeopardizing her freedom and safety by traveling to Iran" (*Id.* ¶¶ 93, 95), the same may be said of all United States citizens with Iranian-national relatives living in Iran.

For these reasons, the court concludes that, on balance, factors three and five favor the government.

### iii. *TRAC* Factor Four

Under the fourth *TRAC* factor, "the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority[.]" 750 F.2d at 80 (citations omitted). Just as the lack of differentiation between plaintiffs-petitioners and others similarly situated pushes the third and fifth factors into the government's corner, so too does that lack of differentiation favor the government under the fourth factor. As defendants-respondents point out (dkt. 12 at 14), where compelling an adjudication for one party would prejudice others who also await final decisions on their visa applications, the fourth factor weighs in favor of the government and is, at times, all but controlling in the unreasonable-delay analysis. *See Calderon-Ramirez*, 877 F.3d at 276 (denying mandamus relief where "nothing in the record" suggested applicant's "wait time [was] any more unreasonable than [that of] other petitioners waiting in the same line"); *Cohen* v. *Jaddou*, No. 21 C 5025, 2023 WL 2526105, at *6 (S.D.N.Y. Mar. 15, 2023) (calling it "especially troublesome" where applicant "appears only to seek to jump ahead of those without the capacity to sue") (collecting cases). While it is possible that the Seventh Circuit would find this line-skipping problem irrelevant in the APA context, for *Calderon-Ramirez* discussed the problem only with respect to mandamus relief, the lack of differentiation nonetheless supports the government's position since compelling an expedited adjudication of Akbar's application would presumably divert resources away from other competing priorities. *See Orozco*, 2023 WL 4595377, at *5 (recognizing that "*Calderon-Ramirez*'s failure to discuss the line-skipping concern in connection with the APA claim [in that case might] mean that it has little relevance to the APA reasonableness analysis[]" but that "diversion of resources from other important [embassy] priorities … weighs in favor" of government).

### iv. *TRAC* Factor Six

Under the Sixth *TRAC* factor, "the court need not 'find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.''" 750 F.2d at 80 (citations omitted). In this case, plaintiffs-petitioners have not alleged any "impropriety" on the part of defendants-respondents, so the sixth *TRAC* factor has no bearing on the court's analysis.

In sum, all *TRAC* factors favor finding that plaintiffs-petitioners have not plausibly alleged that the 11-month "delay" in the adjudication of Akbar's application is unreasonable. Of particular relevance to the court is the relative brevity of that "delay." As noted above, the court is not aware of any case where a district court has found unreasonable delay in an adjudication lasting fewer than two years, much less 12 months. Thus, even if plaintiffs-petitioners had not waived the issue of unreasonable delay, they would be hard pressed to develop any argument, based on these allegations, that might overcome this apparent unanimity in the case law.[9] The court thus concludes that plaintiffs-petitioners have not plausibly alleged unreasonable delay in the adjudication of Akbar's application.

### **CONCLUSION AND ORDER**

For the foregoing reasons, the motion to dismiss (dkt. 11) is granted. Counts I and IV are dismissed with prejudice, but Counts II and III are dismissed without prejudice.

Date: May 3, 2024

U.S. District Judge Joan H. Lefkow

---

[9] Because the court concludes that the adjudication of Akbar's application is ongoing and that plaintiffs-petitioners have not plausibly alleged unreasonable delay, the court need not address defendants-respondents' argument that the Complaint fails plausibly to allege the legal entitlement to a visa. (Dkt. 12 at 11.)